UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT D. SEENO CONSTRUCTION CO., INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AIG SPECIALTY INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 21-cv-02152-JST<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 144, 149 |

Before the Court are motions for summary judgment brought by Plaintiffs Albert D. Seeno Construction Co., Inc. and related entities (collectively, "Seeno"), ECF No. 144, and Defendants AIG Specialty Insurance Company ("ASIC") and Insurance Company of the State of Pennsylvania ("ICSOP"), ECF No. 149. For the reasons set forth below, the Court will grant ASIC and ICSOP's motion and deny Seeno's motion.

## I.   BACKGROUND

Seeno is a group of residential development and construction companies that build homes in Northern California. In order to manage its construction defect liability risk, Seeno purchases multiple layers of general liability insurance. From 2007 to 2015, Seeno obtained primary insurance from Aspen Insurance UK, Ltd. ("Aspen"). Herman Decl. ¶ 4, ECF No. 144-1. Specifically, Aspen issued Policy No. B08010UM74610 effective from December 1, 2007, to December 1, 2012 ("07-12 Aspen policy"), as well as Policy No. B080114282U12, effective from December 1, 2012, to December 1, 2015 ("12-15 Aspen policy"). *Id.* ¶ 5; ECF No. 149-4 at 76. Under the Aspen policies, Aspen agreed to indemnify Seeno against liability for property damage and defend Seeno in any suit seeking damages potentially covered by the policies. Herman Decl.

¶¶ 6-7, ECF No. 144-1.  Aspen's indemnity obligation was subject to a self-insured retention of $250,000 per occurrence.  *Id.* ¶ 6.  The 12-15 Aspen policy had a limit of five million dollars, which was eroded by Aspen's payments made to settle claims and lawsuits, as well as defense expenses.  Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 337.  Specifically, Aspen paid $3,255,88.05 in defense costs and $1,744,111.95 in settlement costs.  Salerno Decl., Ex. F, Herman Depo. at 226:4-227:19.  Seeno also purchased excess insurance through ICSOP and ASIC.  ICSOP provided ten million dollars in excess coverage for the 2007-2012 period, with the 07-12 Aspen policy as the scheduled underlying insurance.  ECF No. 42-1 at 2-29.  ASIC provided ten million dollars in excess insurance for the 2012-2015 period, with the 12-15 Aspen policy as the scheduled underlying insurance.  Herman Decl. ¶ 5, ECF No. 144-1; Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 308-362.

Seeno was subject to multiple construction defect claims for homes built during the 2007–2015 period.  Salerno Decl. ¶ 2, Ex. A, Miller Depo at 109:7-110:4, ECF No. 150.  Aspen covered Seeno's defense and indemnity under its policies.  Fortin Decl. ¶ 2,  Ex. A, ECF No. 149-2.  As Aspen's primary coverage approached exhaustion, Aspen notified ICSOP and ASIC.  *Id.*  ICSOP did not deny that the underlying actions fell within its policy coverage.  ICSOP did, however, refuse to defend Seeno, maintaining that its policy did not contain a duty to defend.  Taylor Decl. ¶ 2, Exs. A-E, ECF No. 149-3.  ICSOP also did not reimburse Seeno for all defense expenses as they were incurred.  ASIC, on the other hand, refused coverage altogether, insisting that under the terms of its policy Seeno was not entitled to coverage.  Herold Decl. ¶¶ 1-2, Exs. A-B, ECF No. 149-1.

On March 26, 2021, Seeno filed the present action against ICSOP and ASIC for breach of contract; declaratory relief; breach of the implied covenant of good faith and fair dealing; and violation of California's Business and Professions Code § 17200.  ECF No. 1.  On September 20, 2021, the Court granted in part and denied in part ASIC and ICSOP's motion to dismiss.  ECF No. 39.  Relevant here, the Court found that under the terms of the ICSOP policy, ICSOP did not have a duty to pay defense expenses as incurred.  ECF No. 39 at 6-7.  Seeno then filed an amended complaint asserting ten causes of action: (1) breach of contract and (2) declaratory relief against

ASIC regarding its duty to defend; (3) breach of contract and (4) declaratory relief against ASIC regarding its duty to indemnify; (5) breach of the implied covenant of good faith and fair dealing against ASIC; (6) unfair business practices against ASIC under California Business and Professions Code § 17200; (7) breach of contract; (8) declaratory relief; (9) breach of the implied covenant of good faith and fair dealing against ICSOP regarding its duty to pay defense expenses; and (10) unfair business practices against ICSOP under California Business and Professions Code § 17200. ECF No. 42. The amended complaint added new theories for Seeno's breach of contract claim against ICSOP regarding defense expenses: (1) that ICSOP breached the policy by failing to reimburse defense expenses in cases where the underlying actions were resolved; (2) that ICSOP and Seeno formed an agreement, separate from the written insurance policy, that required ICSOP to pay defense expenses contemporaneously; and (3) that ICSOP had waived or was estopped from asserting it had no duty to reimburse defense expenses as incurred. *Id.*

Seeno now moves for summary judgment on its second and fourth causes of action. ECF No. 144. ASIC moves for summary judgment on the first through sixth causes of action. ECF No. 149. ICSOP moves for summary judgment on the seventh through tenth causes of action.[1] *Id.*

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

## III. JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned." If a fact is not subject to reasonable dispute, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

ASIC and ICSOP request the Court take judicial notice of the complaint and accompanying exhibits filed in Seeno's state court action against Aspen. ECF No. 149-4. A court

---

[1] ICSOP only moves for summary judgment on the seventh, eighth, and ninth causes of action to the extent they are based on claims of an independent contract or waiver and estoppel.

1  "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella*
2  *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). The Court therefore grants the
3  request.

## IV. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (internal quotation marks and citation omitted) (emphasis in original). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.*

## V. DISCUSSION

### A. Whether Seeno is Entitled to Coverage Under the ASIC Policy

ASIC moves for summary judgment on Seeno's breach of contract claims. ECF No. 149. In addition, both ASIC and Seeno move for summary judgment on Seeno's declaratory relief claims regarding whether ASIC was required to indemnify and defend Seeno under its policy.

4

ECF No. 144, ECF No. 149. All require determination of whether Seeno was entitled to coverage under the terms of the ASIC policy.

In California, interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Id.* If possible, such intent is to be inferred solely from the written provisions of the contract. *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990). The written provisions should be examined "together, so as to give effect to every part, if reasonably practicable." Cal. Civ. Code § 1641. If the contractual language is clear and explicit, it governs. *Bank of the W.*, 2 Cal. 4th at 1264.

If "policy language is ambiguous, it is to be resolved by interpreting the ambiguous provisions in accordance with the insured's objectively reasonable expectations." *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 36 (1996). A policy provision is ambiguous when it is capable of two or more reasonable constructions. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994).

### 1. Applicability of the Coverage A Provision

ASIC and Seeno first dispute which coverage provision of the ASIC policy applies. Seeno contends that it is covered by both Coverage A and Coverage B. ECF No. 144 at 11-13, 18-21. ASIC, on the other hand, argues only Coverage B applies when, as here, there is applicable underlying insurance. ECF No. 149 at 17-18. The relevant provisions state:

A. **Coverage A: Excess Liability Over Insured's Self-Insured Retention.**

> We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage**, or **Personal**

5

> **Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.
>
> Coverage A will be provided according to the terms, definitions, conditions and exclusions of this policy.
>
> B. **Coverage B: Excess Liability Over Scheduled Underlying Insurance and any Other Insurance**
>
> We will also pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** and any **Other Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance** and any **Other Insurance**, except for exhaustion of the total applicable limits of **Scheduled Underlying Insurance** and any **Other Insurance** by the payment of **Loss**.
>
> Coverage B will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this policy, the provisions of this policy will apply.

Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 61 (emphasis in original).

Seeno argues that by its terms, the Coverage A provision is triggered whenever there is satisfaction of the Self-Insured Retention and Coverage B is triggered whenever there is exhaustion of the underlying insurance. ECF No. 144 at 11. Nothing in the terms, Seeno reasons, prohibits both provisions from applying when the underlying insurance is exhausted, and the Self-Insured Retention is satisfied. *Id.* ASIC responds that Coverage A applies only when there is no applicable underlying insurance. ECF No. 149 at 17. Otherwise, it argues, the Coverage B provision would be redundant and superfluous. *Id.* at 17-18.

The Court agrees with ASIC that by the plain terms of the policy, Coverage B applies only when, as here, there is applicable underlying insurance. "The two coverage provisions, when read together, make the [ASIC] policy applicable *either* as excess insurance over the limits of the underlying insurance when the underlying insurance 'covers' an occurrence, or as alternative primary coverage as to losses 'not covered' by the underlying policy." *Wells Fargo Bank v. Cal. Ins. Guar. Ass'n.*, 38 Cal. App. 4th 936, 946 (1995) (emphasis in original). Otherwise, the ASIC policy would effectively serve as primary coverage, because Seeno could invoke the policy anytime the Self-Insured Retention was satisfied regardless of the availability of the Aspen policy. That interpretation is divorced from any reasonable expectation, based on the terms of the policy.

6

*See Waller*, 11 Cal. 4th at 27-28 (1995) (reasonable expectations of the parties reinforced the court's finding that "bodily injury" provision did not require the insurer to defend a third-party lawsuit in which uncovered economic loss was the gravamen of the complaint).

Seeno attempts to avoid this result by arguing there was no applicable underlying insurance for claims made after the Aspen policy exhausted. ECF No. 193 at 15. Since there was no available underlying insurance for those claims, Seeno reasons they fall within the Coverage A provision. *Id.* However, the relevant inquiry is not whether the Aspen policy was available for these claims but whether the claims fell within the scope of Aspen's coverage. *Ticor Title Ins. Co. v. Emps. Ins. of Wausau*, 40 Cal. App. 4th 1699, 1709 (1995) ("In the context of an insurance policy, coverage means 'inclusion within the scope of an insurance policy,' not 'the act or fact of covering.'"). Seeno does not dispute that these claims fall within the scope of the underlying insurance coverage and would have been covered had the policy not exhausted. Therefore, these claims are also governed by Coverage B of the policy. *See id.*

### 2. Whether Coverage B was Triggered

The parties also dispute whether Seeno is entitled to coverage under the Coverage B provision. Both Seeno and ASIC agree that the scheduled underlying insurance, the five million 12-15 Aspen policy, exhausted. ECF No. 144 at 6; ECF No. 149 at 14. Specifically, Aspen paid $ 1,744,111.94 towards resolving the claims and $ 3,255,888.05 in defense costs. Salerno Decl. ¶ 7, Ex. F, ECF No. 150 at 310, 331. They disagree whether this was sufficient to trigger coverage under the Coverage B provision. ASIC contends that the plain terms require exhaustion of the underlying insurance by the payment of loss, which does not include defense expenses. ECF No. 149 at 18-20. Seeno, on the other hand, argues all that was required to trigger Coverage B was exhaustion of the Aspen policy limits. ECF No. 144 at 18-21.

The Court finds that the Coverage B provision unambiguously requires the Aspen policy be exhausted by judgments and settlements, not defense expenses. The provision states that ASIC "will also pay […] those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** and any **Other Insurance […]** provided the damages would be covered by **Scheduled Underlying Insurance** and any **Other Insurance**, except for exhaustion of the total applicable

7

limits […] by the payments of **Loss**." Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 61 (emphasis in original). The term loss is rendered in boldface, directing the reader's attention to that term, and is defined in the definitions section of the policy as "those sums actually paid as judgments and settlements." *Id.* at 67. "The term 'judgments' generally refers to a decision by some adjudicative body as to the parties' rights [and] 'settlements' envisions some agreement between parties as to a dispute between them." *Intel Corp. v. Am. Guar. & Liab. Ins. Co.*, 51 A.3d 442, 449 (Del. 2012). Defense costs do not fall within the plain meaning of either term. *See id.*

Seeno contends this reading is contradicted by Endorsement 9 which amended paragraph F in the Limits of Insurance Section. ECF No. 144 at 20. Paragraph F originally stated that "[i]f the **Self-Insured Retention** or limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss**, we will […] pay those sums covered herein excess of the exhausted **Self-Insured Retention** or **Scheduled Underlying Insurance**." Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 64. Endorsement 9 amended that provision to "[t]his policy applies only in excess of the total applicable limits of **Scheduled Underlying Insurance**, any applicable **Other Insurance** and **Specified Coverage** Self Insured Retention whether or not such limits are collectible." *Id.* at 356-357. Seeno points out that this amendment took out the "payment of loss" language from the Limits of Insurance Section. ECF No. 144 at 20. This amendment, Seeno argues, "only makes sense if ASIC recognized the necessary inconsistency in Coverage B and intended to address that inconsistency" through this paragraph. *Id.* But nothing in Endorsement 9 purports to change the Coverage B provision or when it is triggered. Had the parties wanted to make such a change, they could have done so explicitly through an endorsement. Nor is Endorsement 9 inconsistent with the Coverage B requirement that the underlying insurance be reduced by the payment of loss, as any payment made under Coverage B will necessarily be in "excess" of the underlying insurance. Further undercutting Seeno's argument, Endorsement 9 also modified the paragraph below, paragraph G, to include the "payment of loss" language. Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 357.

ASIC further argues that even if the Aspen policy had been exhausted by the payment of loss, it was still not required to provide coverage under the Coverage B provision until Seeno

satisfied a $ 250,000 Self-Insured Retention. ECF No. 149 at 17. ASIC points to Endorsement 9 entitled "Self-Insured Retention Applicable to Specified Coverage After Underlying Limits are Reduced or Exhausted" which amended the ASIC policy "Declarations, Item 4. Self-Insured Retention" to "include the following *additional* Self Insured Retention" of $ 250,000. Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 356-58 (emphasis added). Seeno contends Endorsement 9 only modified the Self-Insured Retention applicable to the Coverage A provision, not add an additional Self-Insured Retention to Coverage B. ECF No. 193 at 14-15.

That Endorsement 9 would serve as an additional Self-Insured Retention following exhaustion of the Aspen policy is indicated from both the title which states it is "applicable after underlying limits are reduced or exhausted" and its text, which asserts it is to be an "additional" Self-Insured Retention. Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 356-58. Seeno argues that the reference to "underlying limits" in the title of Endorsement 9 does not necessarily implicate the Coverage B provision and as a heading, cannot be relied upon under the terms of the policy. ECF No. 193 at 14-15. While true the ASIC policy states "headings are not operative terms" they still provide context to the policy and the parties intent. And as explained, only Coverage B can apply when there has been exhaustion of the "underlying limits." Further, the text of Endorsement 9 that amends paragraph G to read "[i]f the total applicable limits of **Scheduled Underlying Insurance** […] are reduced or exhausted by the payment of **Loss** to which this policy applies we will […] in the event of exhaustion, pay in *excess* of the **Specified Coverage** Self Insured Retention" makes clear that after exhaustion of the Aspen policy, ASIC would only cover amounts above the Self-Insured Retention. Cox Decl. ¶ 3, Ex. B, ECF No. 145-2 at 357 (emphasis added).

Because the five million dollar Aspen policy has not been exhausted by payments of judgments and settlements, the Coverage B provision, and the corresponding duty to defend have not been triggered. Accordingly, ASIC is entitled to summary judgment on Seeno's first and third causes of action for breach of contract, as well as the second and fourth causes of action for declaratory relief. *See Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp. 2d 697, 712 (N.D. Cal. 2012) (granting summary judgment on claims for declaratory relief incidental to claims for breach of contract).

### B. Whether ICSOP Had a Duty to Pay Defense Expenses as Incurred

#### 1. Independent Contract

The Court previously found that under the terms of the ICSOP policy, ICSOP did not have a duty to pay defense expenses as incurred. ECF No. 39 at 5-7. ICSOP now moves for summary judgment on Seeno's breach of contract claims based on the theory that ICSOP and Seeno entered into a separate agreement, independent of the written ICSOP policy, in which ICSOP agreed to reimburse Seeno for defense expenses as incurred. ECF No. 149 at 24-26. "The . . . elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration." *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (2017) (quoting *Div. of Lab. L. Enf't v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977). ICSOP contends that Seeno has not met its burden of showing a new contract between the parties was formed. ECF No. 149 at 24-26.

To support its breach of contract claim, Seeno points to testimony from Julie Herman, Seeno's risk officer, stating a representative of ICSOP told her "send to Roxana the invoices and the proof of payments and we'll reimburse you." ECF No. 193 at 23 (quoting DeVries Decl., Ex. B at 125:22-126:10, ECF No. 194). This is insufficient to support Seeno's claim another contract was formed. For one, the purported offer is insufficiently definite, as it does not indicate anything about when ICSOP would reimburse the claims. *See Spellman v. Dixon*, 256 Cal. App. 2d 1, 3 (1967) ("to enforce a contract at law, the offer must be sufficiently definite or must call for such definite terms in the acceptance, that the performance required is reasonably certain.") Additionally, there was no new consideration to support the formation of an independent contract, as it is undisputed Seeno was already required to send the invoices and proof of payments under the terms of the ICSOP policy. *See General Motors Acceptance Corp. v. Brown*, 2 Cal. App. 2d 646, 650 (1934) ("consideration for an agreement is not adequate when it is a mere promise to perform that which the promisor is already legally bound to do.") Seeno contends this agreement was supported by adequate consideration, as Seeno allowed ICSOP to control the defense of the Underlying Actions, something it was not required to do under the written ICSOP policy. ECF No. 193 at 23. However, Seeno points to no evidence that it agreed to do this in exchange for

10

ICSOP's payment of defense expenses as incurred. *See Prop. Cal. SCJLW One Corp. v. Leamy*, 25 Cal. App. 5th 1155, 1165 (2018) (consideration "must actually be bargained for as the exchange for the promise.")

### 2. Waiver and Estoppel

"The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture." *Advanced Network Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1066 (2010). "While an insurer may be estopped to assert grounds of forfeiture of policy benefits, the estoppel doctrine may not be used to create coverage not provided by the policy." *Komorsky v. Farmers Ins. Exch.*, 33 Cal. App. 5th 960, 972 (2019), *as modified on denial of reh'g*, (Mar. 29, 2019) (internal quotations and citation omitted).

ICSOP also moves for summary judgment on Seeno's breach of contract claims based on waiver and estoppel, arguing these doctrines cannot be used to extend coverage in such a manner. ECF No. 149 at 26. Seeno responds that it is not attempting to create coverage, as ICSOP already owed a duty to reimburse defense costs. ECF No. 193 at 23-24. As this Court previously found, however, the ICSOP policy did not require ICSOP to pay defense expenses as incurred. ECF No. 39 at 5-7. Rather, Seeno was entitled reimbursement for defense expenses after final resolution of the matters. *Id.* Seeno contends that based on ICSOP's representatives' statements and actions, the doctrines of waiver and estoppel required ICSOP to pay defense expenses as incurred. ECF No. 42 ¶ 71. But these doctrines cannot "be used to create coverage not provided by the policy." *Komorsky*, 33 Cal. App. 5th at 972. Although ICSOP had a duty to pay defense expenses, the policy specified that its obligation arose only after final resolution. ECF No. 39 at 5-7. The doctrines of waiver and estoppel cannot be used to expand coverage to require payment as incurred. *See Komorsky*, 33 Cal. App. 5th at 972.

Accordingly, the Court grants ICSOP's motion for summary judgment on the breach of contract and declaratory reliefs claims to the extent they are based on ICSOP's failure to pay

1  defense expenses as incurred. *See Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp.
2  2d 697, 712 (N.D. Cal. 2012) (granting summary judgment on claims for declaratory relief
3  incidental to claims for breach of contract).

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

ASIC and ICSOP both move for summary judgment on Seeno's claims for breach of the implied covenant of good faith and fair dealing. ECF No. 149 21-22, 28. To establish a breach of the implied covenant of good faith and fair dealing the insured must show that (1) benefits due under the policy were withheld, and (2) the reason for withholding the benefits was unreasonable. *Align Tech., Inc. v. Fed. Ins. Co.*, 673 F. Supp. 2d 957, 965 (N.D. Cal. 2009).

As explained, Seeno was not entitled to any benefits under the ASIC policy. Because no benefits were due under the ASIC policy, there can be no breach of the implied covenant of good faith and fair dealing. *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1173 (S.D. Cal. 2022). Similarly, because ICSOP was not required to pay defense expenses as incurred under the policy, there can be no breach of the implied covenant of good faith and fair dealing based on its failure to do so. *See id.* Accordingly, the Court grants ASIC and ICSOP's motions for summary judgment as to Seeno's fifth and ninth causes of action for breach of the implied covenant of good faith and fair dealing.

### D. Unfair Competition Law Claims

Lastly, both ASIC and ICSOP move for summary judgment on Seeno's Unfair Competition Law ("UCL") claims which prohibits "unfair competition" as defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Remedies available to private plaintiffs under the UCL "are generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999). In the insurance context, to establish a claim under the UCL an insurer must show: (1) they were insured or the intended beneficiary of the insurance policy, (2) the existence of the policy, (3) the insurer's conduct and that such conduct was an unfair, unlawful or fraudulent business practice, (4) they have no adequate remedy at law, (5) a request for injunctive relief or restitution, as monetary damages are not recoverable under the UCL, and (6) a request for attorney's fees. *Allen*

*v. Protective Ins. Co.*, No. 20-cv-530-JLT-CDB, 2023 WL 2602172 at *4 (E.D. Cal Mar. 22, 2023).

ASIC and ICSOP argue they are entitled summary judgment on the UCL claims as Seeno is not entitled to any remedy under the UCL. ECF No. 149 at 23-24, 28. First, they contend Seeno is not entitled to injunctive relief as there is no chance of future repetitive harm. ECF No. 149 at 28. Seeno "does not address this point and therefore concedes it by [its] silence. *Bluestar Genomics v. Song*, No. 21-CV-04507-JST, 2023 WL 8852735, at *6 (N.D. Cal. Dec. 21, 2023) (citing *Lou v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2022 WL 18539358, at *2 (N.D. Cal. Aug. 26, 2022)). Accordingly, Seeno is not entitled to injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (the party seeking injunctive relief must show a threat of injury that is "actual and imminent, not conjectural or hypothetical.")

Second, ASIC and ICSOP argue Seeno does not have a claim for restitution, as what it really seeks is benefits under the policy. ECF No. 149 at 23-24. Seeno's opposition does not dispute this point or specify what restitution it seeks. Thus, the Court grants ASIC and ICSOP's motion for summary judgment on Seeno's sixth and tenth causes of action under the UCL. *See Acad. of Motion Picture Arts & Scis. V. GoDaddy.com, Inc.*, No. CV 10-03738-AB (CWX), 2015 WL 12684340, at *12 (C.D. Cal. Apr. 10, 2015) (granting summary judgment on UCL claim where plaintiff could not show entitlement to restitution or injunctive relief); *see also Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment.").

## CONCLUSION

For the foregoing reasons, ASIC's motion for summary judgment is granted, ICSOP's motion for partial summary judgment is granted, and Seeno's motion for partial summary judgment is denied.

**IT IS SO ORDERED.**

Dated: January 25, 2024



_____
JON S. TIGAR
United States District Judge